UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
UNITED STATES OF AMERICA      :
                                              :
   - v. -                                     :
                                              :      12 Cr. 725 (KMW)
FREDERICK P. CATALANO, JR., and  :      OPINION & ORDER
MICHAEL COSTANZA,                :
                                              :
                    Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KIMBA M. WOOD, U.S.D.J.:

       On August 26, 2013, Defendant Frederick P. Catalano, Jr. ("Catalano") and Defendant Michael Costanza ("Costanza") were charged with: (1) conspiracy to commit mail fraud, wire fraud, and health care fraud in violation of 18 U.S.C. § 1349 (Count One); (2) conspiracy to defraud the United States Railroad Retirement Board ("RRB"), in violation of 18 U.S.C. § 371 (Count Two); (3) health care fraud (Catalano, Count Four) (Costanza, Count Six); (4) mail fraud (Catalano, Count Eight); and (5) wire fraud (Catalano, Count Eleven) (Costanza, Count Thirteen).  On October 10, 2013, after a thirteen-day jury trial, both Defendants were found guilty on all counts.

       Defendants now move for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("FRCP") on the grounds that the Government failed to present evidence that would enable a reasonable jury to find that Defendants: (1) participated in the alleged conspiracy; or (2) provided false information to the RRB in order to obtain disability benefits.  Additionally, Costanza argues that the Government failed to establish that the conspiracy and health care fraud counts were brought within the statute of limitations.

       In the alternative, Defendants move for a new trial pursuant to Rule 33 of the FRCP.  Costanza moves for a new trial because (1) "the jury was improperly exposed to evidence

1

regarding the disability applications filed by other former [Long Island Rail Road (LIRR) retirees]," (Costanza Mem. of Law 11 [Dkt. No. 152]); (2) the Court "erred by denying the defense request to limit the redacted indictment sent to the jury," (*id.*); and (3) the Court "erred by failing to give a multiple conspiracy charge as requested by the defense," (*id.* at 12). Catalano asserts no separate grounds as the basis for his Rule 33 motion.

For the reasons that follow, the motions for judgment of acquittal and for a new trial, [Dkt. Nos. 146, 150], as to both Defendants are DENIED.

I. Rule 29 Motions

A. Standard of Review

Pursuant to FRCP 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. "A defendant challenging the sufficiency of trial evidence bears a heavy burden." *United States v. Giovanelli*, 464 F.3d 346, 349 (2d Cir. 2006) (internal quotation marks omitted). As explained by the Second Circuit:

> Not only must the evidence be viewed in the light most favorable to the Government and all permissible inferences drawn in the Government's favor, but the jury verdict must be upheld if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In other words, a court may grant a judgment of acquittal only if the evidence that the defendant committed the crime alleged was nonexistent or ... meager.

*United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (internal citations and quotation marks omitted).

B. Discussion

i. Conspiracy and Intent to Defraud the RRB

1. Applicable Law

2

"In order to convict a defendant of the crime of conspiracy, the Government must show that two or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its general nature and extent." *United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010). "The Government's proof of an agreement does not require evidence of a formal or express agreement; it is enough that the parties have a tacit understanding to carry out the prohibited conduct." *United States v. Nusraty*, 867 F.2d 759, 763 (2d Cir. 1989) (internal quotation marks omitted).

The Second Circuit has stressed that:

> When a defendant challenges the sufficiency of the evidence in a conspiracy case, deference to the jury's findings is especially important ... because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.

*United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (internal quotation marks and citation omitted). "The record must nonetheless permit a rational jury to find: (1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *Id.* (internal citations omitted). "[T]he elements of a conspiracy may be proved by circumstantial evidence." *United States v. Svoboda*, 347 F.3d 471, 477 (2d Cir. 2003).

### 2. Costanza

Costanza argues that (1) the Government failed to prove a "broad scheme" to commit disability fraud at the LIRR, (Costanza Mem. of Law 4); (2) the evidence failed to establish that he joined any conspiracy with Dr. Peter Ajemian ("Ajemian") or Joseph Rutigliano ("Rutigliano"), (*id.* at 5, 6); and (3) the evidence failed to establish that he provided false information to the RRB in order to obtain disability benefits, (*id.* at 7). The Court disagrees.

3

The Government presented overwhelming evidence that a conspiracy to commit disability fraud existed at the LIRR, to establish that Costanza participated in the conspiracy with Ajemian and Rutigliano, and to prove that Costanza provided false information to the RRB to obtain disability benefits. The Court therefore DENIES Costanza's motion for judgment of acquittal.

The Government presented abundant evidence that a "broad scheme" or conspiracy to commit disability fraud existed at the LIRR. Four former LIRR employees, who themselves plead guilty to engaging in that conspiracy, testified that railroad employees openly discussed how to falsely claim disability. The scheme involved creating a medical paper trail of unnecessary visits and tests well before applying for disability, and paying disability "consultants" to fill out false applications on their behalf. (Tr. 72–74, 88–90 (Stavola); 219–21, 228–31 (Parlante); 718–725 (Walsh); 1043–44, 1050–53 (Maher) [Dkt. Nos. 121, 123, 127, 131]). The Government showed that hundreds of disability applications submitted by LIRR employees were substantively identical. (Tr. 355–59; GX 103-A). The fact that disability fraud was rampant at the LIRR was corroborated by evidence that, although Metro-North and LIRR are substantially similar railroads, a much higher portion of LIRR retirees filed for and received disability benefits than Metro North retirees in the relevant years. (Tr. 202–03; GX 106).

The Government presented more than sufficient evidence to prove that Costanza participated in the conspiracy with Ajemian. Multiple witnesses testified about the role Ajemian played in the conspiracy. Ajemian submitted narratives to the RRB stating that employees were too disabled to do their jobs and lied about the employees' physical limitations in supporting medical forms. (Tr. 723–27. 729–33 (Walsh); 1050–58 (Maher)). In exchange, Ajemian received cash payments from employees, and was able to charge employees' insurance companies for many series of unnecessary visits. (Tr. 724–27; 733 (Walsh); 1056–57 (Maher)).

4

The evidence presented at trial established that Ajemian played the same role for Costanza. (Tr. 835-36, 841–42, 850–53; GX 300-D). For example, the jury heard testimony and saw evidence that Costanza began regularly seeing Ajemian nine months before submitting a disability application to the RRB. (Tr. 835–36; 850; GX 300-D). The jury saw evidence that Costanza paid Ajemina $750 for a disability narrative and $50 for disability forms three months *before* Ajemian concluded that Costanza was disabled. (*Compare* GX 300-D *with* GX 301-D). The Government presented copious evidence that Costanza did not have any serious disabling condition. (Tr. 850–52).

The Government offered sufficient evidence to prove that Costanza participated in the conspiracy with Rutigliano. Two former conductors testified that LIRR retirees who wanted to falsely claim disability knew to hire Rutigliano, who was a former LIRR conductor, as a disability "consultant." The two former conductors testified that they each had paid Rutigliano $1000 in cash to create paperwork that falsely claimed that they were disabled. (Tr. 218, 220, 230–32, 237–38 (Parlante); Tr. 1046, 1051, 1058–65 (Maher)). The Government produced over 130 applications and vocational reports from former LIRR workers that were virtually identical to Costanza's application and vocational report. (*Id.*; GX 103-A). The Government established that all of these applications and vocational reports—including Costanza's—were virtually identical to Rutigliano's own application. (*Id.*). There was more than enough evidence for a reasonable jury to find that Rutigliano falsely prepared Costanza's vocational report and application, just as he did for the testifying conductors.

The evidence presented at trial overwhelmingly established that Costanza provided false information to the RRB in order to obtain disability benefits. Costanza's disability application claimed that it was hard for him to sit, stand, walk, drive, feed himself, dress himself, read, and

5

write. (GX 300-A). However, the Government's evidence showed that Costanza, while purportedly disabled, served as a Class A volunteer firefighter, (Tr. 459–60), was found to be in good physical health in annual physical exams, (Tr. 1094–1108), played golf, (Tr. 1210–15), and admitted in patient questionnaires to having no medical problems, (GX 356 B-E).

### 3.  Catalano

Catalano argues that the Government failed to prove (1) that he knowingly and intentionally entered into the charged conspiracy, (Catalano Ltr. Motion 3 [Dkt. No. 146]); and (2) that he intended to defraud the RRB, (*id.* at 4). The Court disagrees. The evidence presented at trial sufficiently established both that Catalano participated in the conspiracy and that he intended to defraud the RRB. The Court therefore DENIES Catalano's motion for judgment of acquittal.

As described above, former LIRR employees testified that one part of the scheme to falsely claim disability involved creating a medical paper trail to support the false disability application. The Government presented sufficient evidence that Catalano did just this. Catalano visited Dr. Warwick Green twice before getting him to submit to the RRB a medical assessment that Catalano used to support his disability claim. (Tr. 785). Although Catalano in fact received no real medical treatment from Dr. Green, he falsely stated on his disability application that he had been seeing Dr. Green for 15 months; as soon as he was awarded disability benefits, he stopped seeing Dr. Green. (Tr. 785–89, 1670–71; GX 122). Catalano also began seeing a chiropractor, Dr. Gerard Smith, to support his disability application. (Tr. 1412, 1488–89). Catalano falsely claimed on his application that he had been seeing Dr. Smith for years. (GX 400-A). However, Dr. Smith admitted on cross-examination that he saw Catalano for just nine weeks before he completed Catalano's RRB disability form. (Tr. 1493–97). The Government

write. (GX 300-A). However, the Government's evidence showed that Costanza, while purportedly disabled, served as a Class A volunteer firefighter, (Tr. 459–60), was found to be in good physical health in annual physical exams, (Tr. 1094–1108), played golf, (Tr. 1210–15), and admitted in patient questionnaires to having no medical problems, (GX 356 B-E).

### 3.  Catalano

Catalano argues that the Government failed to prove (1) that he knowingly and intentionally entered into the charged conspiracy, (Catalano Ltr. Motion 3 [Dkt. No. 146]); and (2) that he intended to defraud the RRB, (*id.* at 4). The Court disagrees. The evidence presented at trial sufficiently established both that Catalano participated in the conspiracy and that he intended to defraud the RRB. The Court therefore DENIES Catalano's motion for judgment of acquittal.

As described above, former LIRR employees testified that one part of the scheme to falsely claim disability involved creating a medical paper trail to support the false disability application. The Government presented sufficient evidence that Catalano did just this. Catalano visited Dr. Warwick Green twice before getting him to submit to the RRB a medical assessment that Catalano used to support his disability claim. (Tr. 785). Although Catalano in fact received no real medical treatment from Dr. Green, he falsely stated on his disability application that he had been seeing Dr. Green for 15 months; as soon as he was awarded disability benefits, he stopped seeing Dr. Green. (Tr. 785–89, 1670–71; GX 122). Catalano also began seeing a chiropractor, Dr. Gerard Smith, to support his disability application. (Tr. 1412, 1488–89). Catalano falsely claimed on his application that he had been seeing Dr. Smith for years. (GX 400-A). However, Dr. Smith admitted on cross-examination that he saw Catalano for just nine weeks before he completed Catalano's RRB disability form. (Tr. 1493–97). The Government

also submitted evidence showing that after a series of visits, Smith claimed to the RRB that Catalano was permanently disabled.  (*Id.*; GX 400-L, 418).  Smith also repeatedly informed Catalano's disability insurers that Catalano was totally and permanently disabled from any job for which he was qualified.  (Tr. 1497–99).  However, Smith's own notes for those visits revealed that Catalano's condition was improving and that Catalano felt 30 to 50 percent better after seeing Smith a few times.  (Tr. 1495–96).

One of the consultants used by retirees to fill out false applications on their behalf was Marie Baran ("Baran").  One witness testified that Baran did not ask him a single question about his job or physical condition before falsely completing his disability application in exchange for $1200 in cash.  (Tr. 116–20, 123–31).  Another witness testified that Baran falsely completed her disability application in exchange for $1000 in cash, coached her to lie in an interview with the RRB regarding her application, and told her to keep seeing Ajemian even after she applied for disability so that she would have evidence of her ongoing "disabled" condition to use for an appeal if she was denied benefits.  (Tr. 733–36, 741–47).  The Government presented sufficient evidence that Catalano also paid Baran to fill out a false disability application on his behalf.  Catalano admitted that he paid Baran to complete his disability application.  (Tr. 1620).  The application stated that Catalano could not perform even the most basic physical activities, such as bending, stretching, and reaching.  (GX 401-A).  Both Catalano and his son admitted on cross-examination that certain statements in his disability application relating to his physical limitations were not true.  (Tr. 1633; 1340–42).

The Government also presented evidence of Catalano's actual, non-disabled physical condition, which, along with the evidence already described, sufficiently established Catalano's intent to defraud the RRB.  The Government presented evidence that Catalano, while purportedly

disabled, regularly trained to receive a fifth-degree black belt in jiu-jitsu. (Tr. 1383–84). At trial the Government introduced a video of Catalano's fourth-degree black belt test, which showed him kicking, punching, twisting, and throwing his opponent to the ground, despite his supposedly disabling condition. (GX 410).

### ii. Statute of Limitations

Constanza also argues that the Government failed to establish that Counts One (conspiracy to commit mail fraud, wire fraud, and health care fraud), Two (conspiracy to defraud the RRB), and Six (healthcare fraud) were brought within the applicable statute of limitations.[1] Specifically, Costanza argues that the Government failed to establish (1) that the conspiracies continued within the five years prior to January 8, 2013; and (2) that he received health care benefits by fraud within five years prior to January 8, 2013. The Government argues (1) that Costanza forfeited his statute of limitations defense by failing to raise the defense prior to his post-trial motion for acquittal, (Govt. Mem. of Law 24 [Dkt. No. 158]); and (2) even if Costanza's motion is timely, his argument fails on the merits, (*id.*). The Court finds the Government's arguments persuasive.

Because Costanza did not request the Court to instruct the jury as to the applicable statute of limitations for Counts One or Six, did not object when the Court failed to do so, and raised this defense for the first time in his post-trial motions, he has waived his statute of limitations defense with regards to Count One and Count Six. *See, e.g.*, *United States v. Coté*, 544 F.3d 88 (2d Cir. 2008) (finding that a defendant had "waived his statute of limitations defense by failing to raise the issue prior to or during his trial"); *United States v. Grammatikos*, 633 F.2d 1013,

---

[1] In his reply papers Costanza argues that the Government also failed to establish that Count Thirteen (wire fraud) was brought within the applicable limitations period. Because Costanza raises this issue for the first time in his reply papers, the Court declines to consider it. *See, e.g.*, *Mateo v. Bristow,* 12 Civ. 5052, 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) (Sullivan, J.) ("It is well established . . . that a court should not consider arguments that are raised for the first time in a reply brief." (collecting cases)).

1022, 103–04 (2d Cir. 1980) (finding that, where appellant did not request a jury charge relating to a statute of limitations defense or object to the Court's failure to include such a charge, the defense was waived); *see also United States v. Spero*, 331 F.3d 57, 60 n.2 (2d Cir. 2003) ("Because the defendant . . . raised his statute of limitations defense in this case only after the trial was over, and therefore did not allow the court even to consider a jury instruction on the limitations question, there is a strong argument that [defendant's] statute of limitations claim should be considered waived, or at least forfeited.").[2]

Costanza argues that he did not waive his statute of limitations defense because the Court charged the jury that "the applicable statute of limitations for Count Two requires that the overt act must have occurred after January 8, 2008." (Costanza Reply Mem. 10 [Dkt. No. 167]). Just as with Counts One and Six, Costanza did not request that the Court instruct the jury about the applicable statute of limitations for Count Two. The Court gave this jury instruction *sua sponte*. Defendant provides no support for his argument that an affirmative defense is properly preserved simply because the Court charges the jury about the defense on its own accord.

Even assuming, arguendo, that Costanza had preserved his statute of limitations defense as to Counts One, Two, and Six, the Court finds that Costanza's argument fails on the merits, because the Government provided sufficient evidence for the jury to conclude that all three Counts were brought within the applicable statute of limitations period.

"For a conspiracy charge that requires proof of overt acts to be within the statute of limitations, the (1) conspiracy must still have been ongoing within the five year period preceding

---

[2] In *United States v. Vebeliunas*, 76 F.3d 1283 (2d Cir. 1996), the Second Circuit held that a defendant had not waived a statute of limitations defense by failing to request a jury instruction. *Id.* at 1292. The Court distinguished *Grammatikos* because the issue in that case "was one of fact to be decided by the jury" but "[w]hen, as here, the limitations argument is purely an issue of law, there would be no point in requiring a party to seek a jury instruction in the aftermath of an unsuccessful pretrial motion. " *Id.* Costanza's statute of limitations argument is factual—whether the Government established that the conspiracies and health care fraud continued after January 8, 2008—and therefore *Vebeliunas* does not apply.

the indictment, and (2) at least one overt act in furtherance of the conspiratorial agreement [must have been] performed within that period." *United States v. Ben Zvi*, 242 F.3d 89, 97 (2d Cir. 2001) (quotation marks omitted).  Here, the indictment was returned on January 8, 2013.  At least one overt act in furtherance of the conspiracy would have to have been committed within the period January 8, 2008, to January 8, 2013.  *Id.*; *see also* 18 U.S.C. § 3282(a).  The jury was presented with sufficient evidence to so conclude.

The jury was presented with evidence that Costanza continued to commit overt acts in furtherance of the conspiracy during the limitations period by affirmatively concealing information from the RRB.  For example, Costanza had an affirmative obligation to inform the RRB if his condition improved, but he failed to do so despite repeatedly passing physical exams to serve as a volunteer firefighter.  (Tr. 1094–1108; GX 310, 312, 313, 314).  In addition, the Government presented evidence that Costanza's co-conspirators committed several overt acts in furtherance of the conspiracy during the limitations period, including evidence that his co-Defendant, Catalano, fraudulently applied for disability benefits in 2011 with the help of disability "consultant" Baran, (GX 400 A); that a cooperating witness submitted a fraudulent disability application in June 2008 also with the help of Baran, (GX 900 A); and that his co-conspirators mailed re-certifications to the RRB in March 2011 and August 2012, affirming the lies told in their original disability applications, (GX 403, 803, 853, 907, 952).[3]

Like the conspiracy counts, health care fraud is also subject to a five-year statute of limitations.  18 U.S.C. § 3282(a).  The Government thus was required to prove that Costanza

---

[3] The rule that "[f]oreseeable acts of one co-conspirator in furtherance of the conspiracy are attributable to all co-conspirators," *United States v. Milstein*, 401 F.3d 53, 72 (2d Cir. 2005), applies here; Costanza makes no argument that he withdrew from the conspiracy prior to the overt acts committed by his co-conspirators.

committed health care fraud within the period January 8, 2008, to January 8, 2013.[4] The jury was presented with enough evidence to so conclude.

The Government introduced evidence (1) that Costanza saw Ajemian on June 1, 2009, (GX 650); and (2) records of health care payments to Ajemian for Costanza's visits that showed that Ajemian received a payment for the June 1, 2009, visit on July 1, 2009, (*id.*). Based on other evidence presented at trial, the jury could reasonably have concluded that Costanza's June 1, 2009, visit to Ajemian was in furtherance of the disability paper trail that the two were attempting to maintain in connection with their health care fraud scheme. For example, the jury heard testimony that Ajemian provided no meaningful treatment for any conditions Costanza claimed to have, (Tr. 850–51; GX 121); saw evidence that Costanza himself claimed to suffer no such condition, (GX 356 A-E); and heard a witness testify that she was advised by disability "consultant" Baran to continue visiting Ajemian even after applying for disability, in order to maintain a paper trail in the event that her benefits were denied, (Tr. 736–37).

II.    Rule 33 Motions

    A.  Standard of Review

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Rule 33 "gives the trial court 'broad discretion ... to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.' The district court must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (internal citation omitted). The court "must examine the entire

---

[4] A defendant commits healthcare fraud when he or she "knowingly and willfully executes, or attempts to execute, a scheme or artifice (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1347.

case, take into account all facts and circumstances," and grant relief only if it has "a real concern that an innocent person may have been convicted." *Id.* at 134.

B. Application

i. Costanza

Costanza makes three arguments for a new trial pursuant to FRCP 33: (1) "the jury was improperly exposed to evidence regarding the disability applications filed by other former LIRR retirees," (Costanza Mem. of Law 11); (2) the Court "erred by denying the defense request to limit the redacted indictment sent to the jury to the statutory allegations and eliminate the argumentative portions," (*id.*); and (3) the Court further "erred by failing to give a multiple conspiracy charge as requested by defense, (*id*. at 12). The Court finds each of these arguments meritless and therefore DENIES Costanza's motion for a new trial.

First, Costanza argues that it was improper for the Court to admit evidence regarding the disability applications filed by other former LIRR retirees because it "clearly caused the jury to improperly decide the case not on the evidence against Mr. Costanza but on evidence implicating hundreds of other alleged participants." (*Id.* at 11). The Court finds that the evidence relating to disability applications filed by other former LIRR retirees was properly admitted to prove the existence of the conspiracy. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998) ("Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant.").[5]

Second, Costanza argues that the Court "erred by denying the defense request to limit the

---

[5] In a pre-trial motion, Costanza asked the Court to preclude the Government from introducing evidence relating to other LIRR retirees. [Dkt. No. 94]. The Court denied the request, holding that "evidence relating to other LIRR retirees is plainly relevant and admissible to show the existence of a widespread scheme at the LIRR, which the Government contends was duplicated by the defendants." (Tr. 12).

redacted indictment sent to the jury to the statutory allegations and eliminate the argumentative portions." (Costanza Mem. of Law 11). "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001). Costanza makes no argument, and the Court does not find, that there was surplusage in the indictment irrelevant to the crime charged, or that was inflammatory, and prejudicial.[6] The Court therefore did not err in denying the defense request to limit the indictment to the statutory allegations.

Third, Constanza argues that the Court "erred by failing to give a multiple conspiracy charge as requested by defense." (Costanza Mem. of Law 12).[7] "A criminal defendant is entitled to a jury instruction reflecting his defense theory for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court." *United States v. Vazquez*, 113 F.3d 383, 386 (2d Cir. 1997) (internal quotation marks and citations omitted). "If the evidence at trial supports an inference that there was more than one conspiracy, then, whether multiple conspiracies existed is a question of fact for the jury." *Id.* The Second Circuit has explained that in order to prove a single conspiracy:

---

[6] Costanza's memorandum of law highlights the last line of paragraph 20 of the indictment as an example of surplasage that should have been redacted. (Costanza Mem. of Law 11). The last line of paragraph 20 of the indictment reads: "Thus the regulatory system is vulnerable to abuse by employees and treating physicians who falsify and exaggerate symptoms, as the RRB is required to give their statements extra weight." (Indictment ¶ 20 [Dkt. No. 80]). The Court finds that this line is clearly relevant to the charged crimes of conspiracy to commit health care fraud, conspiracy to defraud the RRB, and healthcare fraud, and is neither inflammatory nor prejudicial.

[7] The Court notes that neither Defendant requested a multiple conspiracy charge when the parties' joint Requests to Charge were submitted to the Court. On October 2, 2013, Costanza submitted a letter to the Court setting forth reasons and authorities for his proposed changes to the joint charges. [Dkt. No. 112]. At the end of the letter, Costanza added the following proposed additional charge: "The Government must prove beyond a reasonable doubt the existence of the conspiracies charged in the indictment. Membership in some other conspiracy is not sufficient." The Court held a charge conference on October 4, 2013, that continued on October 7, 2013. The Court notes that neither Defendant requested a multiple conspiracy charge or objected to the lack of such charge in the Court's proposed jury instructions at the charge conference.

> [T]he Government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal. The coconspirators need not have agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan. The goals of all the participants need not be congruent for a single conspiracy to exist, so long as their goals are not at cross-purposes.

*United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) (internal quotation marks and citations omitted).

Costanza points to no evidence presented at trial that tends to show that there was more than one conspiracy; rather, Costanza argues that the Government did not prove a single conspiracy. Costanza's argument is unavailing. The Government presented more than sufficient evidence that a single conspiracy existed, including (1) testimony of cooperating witnesses about how railroad employees openly discussed how to falsely claim disability, the mechanics of the conspiracy, and the roles of key leaders (e.g., Ajemian, Rutigliano, and Baran), (Tr. 72–74, 88–90 (Stavola); 219–21, 228–31 (Parlante); 718–725 (Walsh); 1043–44, 1050–53 (Maher); (2) corroborating records that showed that 94% of the over 900 employees who saw Ajemian obtained disability benefits with his assistance, (Tr. 327–28; GX 101); (3) hundreds of substantively similar disability application materials submitted by LIRR retirees, (Tr. 355–59; GX 103-A); and (4) testimony regarding the enormous disparity in disability rates at the LIRR and Metro-North in the relevant years, (Tr. 202–03; GX 106). Because there was more than sufficient evidence for a reasonable jury to conclude that a single conspiracy existed, and because Costanza points to no evidence that tends to show that there was more than one conspiracy, the Court did not err in failing to give a multiple conspiracy charge to the jury.

### ii. Catalano

Defendant Catalano advances no separate arguments for his Rule 33 motion for a new

trial. The Court therefore DENIES the motion for the reasons set forth above with respect to his Rule 29 motion.

III.     Conclusion

For the foregoing reasons, the motions for judgment of acquittal and for a new trial, [Dkt. Nos. 146, 150], as to both Defendants are DENIED.

SO ORDERED.

Dated:   New York, New York
         February 20, 2014

_____/s/_____
Kimba M. Wood
United States District Judge